Filed 2/19/15  P. v. Russell CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ERIC RUSSELL,<br><br>Defendant and Appellant. | B251286<br><br>(Los Angeles County<br>Super. Ct. No. TA126145) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II, Supervising Deputy Attorney General, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Eric Russell was convicted by a jury of assault with a firearm, possession of a firearm by a felon, and possession of ammunition. Under the Three Strikes law,[1] the trial court sentenced him to 25 years to life. Defendant's sole contention on appeal is that the trial court abused its discretion by denying his *Romero* motion.[2] We disagree and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Romel Pace had known defendant since 2000. They would frequently gamble on football, baseball, and basketball games. Depending on the bet, one of them could owe the other $300 to $400 at any one time. However, they always paid off the debts without serious argument. Defendant would usually tell Pace, " 'Just holler at me when you're ready [to pay off the debt].' "

On September 30, 2012, Pace lost a $600 bet with defendant over the outcome of several football games. That same day, Pace sent defendant a text message that he needed a " 'little time to pay' " the debt. Defendant responded to Pace's text message by calling him around 9:16 p.m. Defendant appeared angry and told Pace he wanted his money. In response, Pace offered to pay defendant $200 the next day. Defendant was not satisfied with Pace's offer and became upset. According to Pace, defendant "was talking about how he's a gangster, he's a killer, he's a jacker, and that kind of stuff." Pace was surprised by defendant's reaction and thought defendant "wasn't in his right mind, and it's just that simple." At some point during their conversation Pace became upset with defendant's ranting and said, " 'I don't give a fuck about that shit.' " Defendant said, "Well, I do." Pace replied, " 'Well I don't.' "

---

[1] Under the Three Strikes law, if a defendant reoffends after having suffered a first qualifying felony conviction, a doubled sentence is mandatory. (*People v. Vargas* (2014) 59 Cal.4th 635, 638.) "If, after having suffered two qualifying felony convictions, an offender commits a third qualifying felony, the Three Strikes law presumes he or she is incorrigible and requires a life sentence." (*Ibid.*)

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

Around 9:30 p.m., or shortly after their telephone conversation, defendant drove to Pace's home and stopped his car in the middle of the street. Pace approached defendant's car. Defendant got out of his car with a gun in his right hand and said to Pace, " 'What's up, big luck?' " When Pace saw that defendant had a gun, Pace started to back away. Defendant then pointed the gun at Pace's head. As Pace ran down the street, he heard four or five gunshots but was not hit. Pace saw defendant pull the trigger; he also saw a muzzle flash from the gun. Pace returned to his home after defendant got back in his car and left the area.

Donald Marshall was in his driveway on September 30, 2012 at approximately 9:30 p.m. when he heard two men arguing about 50 yards away. After Marshall heard several gunshots and saw muzzle flashes, he called 911. The police arrived on the scene a few minutes later.

At first, Pace was reluctant to report the shooting or talk to the police because he was in shock and had known defendant for a long time. However, after family and friends convinced him to speak to the police, he did so about two hours after the incident. After police officers searched the area identified by Pace as the scene of the crime, they found three casings and one bullet. Cell phone records showed that when defendant called Pace around 9:16 p.m., defendant was near the crime scene.

In an information filed on March 11, 2013, defendant was charged in Count 1 with premeditated attempted murder in violation of Penal Code[3] section 664/187, subd. (a)); in Count 2 with assault with a firearm in violation of section 245, subd. (a)(2); in Count 3 with possession of a firearm by a felon in violation of section 29800, subd. (a)(1); and in Count 4 with possession of ammunition in violation of section 30305, subd. (a)(1). The information also alleged as to Counts 1, 2, and 3 that defendant had suffered three prior convictions of violent or serious felonies within the meaning of sections 1170.12, subdivisions (a) through (d) and 667, subdivisions (b) through (i), and that defendant had a prior prison term within the meaning of

---

[3]     All further statutory references are to the Penal Code.

section 667.5. Defendant pled not guilty and denied the special allegations. Following a jury trial, he was found guilty of Counts 2, 3, and 4 in May 2013. He was acquitted of Count 1. After the verdict was rendered, Defendant admitted his three prior strike convictions from October 1994 consisting of two robbery counts (§ 211) and one count of kidnapping during the commission of a carjacking (§ 209.5).

Defendant's motion to strike his prior convictions under *Romero* was denied by the trial court. The court imposed a sentence of 25 years to life on Count 2 under the Three Strikes law. The court stayed the sentence on Counts 3 and 4 under section 654. Defendant filed a timely notice of appeal from the judgment of conviction.

## DISCUSSION

1. *Standard of Review*

Defendant's challenge to the trial court's denial of his motion to strike his prior convictions of violent or serious felonies is reviewed for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*). "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.)

2. *The Trial Court Did Not Abuse Its Discretion by Denying the Romero Motion*

"[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*,

*supra*, 13 Cal.4th at p. 528.) Unlike other sentencing laws, the Three Strikes law establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court " 'conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]" (*Carmony, supra*, 33 Cal.4th at p. 377.)

When considering whether to strike prior convictions, the relevant factors a court must consider are "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The Three Strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm . . . . [T]he law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) On appeal, we must presume the trial court considered all the relevant factors in the absence of an affirmative record to the contrary. *(People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

At defendant's sentencing hearing, his counsel asked the court to strike one or more of defendant's prior strike convictions and "impose a one-strike sentence." Defense counsel argued that all of defendant's prior strike convictions arose from a single 1994 case. Although defense counsel acknowledged there were two victims in the 1994 case, he claimed the prior strike convictions arose from one incident, defendant had been sentenced to life imprisonment when he was only 25 years of age, and defendant had been a model prisoner. Defense counsel also argued that after defendant's release from prison in May 2010, defendant complied with parole and the law for several years, was gainfully employed, and had reconnected with his family.

5

The prosecution opposed the motion and noted that defendant had not reoffended until 2012 "because he was incarcerated for 16 years" and there was no expectation defendant would "reform his conduct at any point."

The court denied defendant's motion to strike in its entirety. First, the court stated that the prior strike convictions arose from very serious charges involving robbery and kidnapping. Second, the court noted that the prior strike convictions arose from "three very distinct crimes." Third, the court stated that although defendant had "behaved himself" while in custody for the 1994 case, he reoffended "less than three years after being released on a life sentence." Under these circumstances, the court doubted defendant's "ability to conform to the laws of society." The court explained that although defendant had everything going for him after he was released from prison in 2010, "he still chose to be a violent individual." Before denying the motion, the court considered "defendant's age, his maturity, his interaction with the criminal justice system, [and] his conduct in this case."

On appeal, defendant contends the court abused its discretion because the 1994 convictions are too remote in time to justify sentencing under the Three Strikes law, the 1994 convictions all involved the same incident, and he has conducted himself in an exemplary manner after he was released from prison in 2010.

We first consider whether defendant falls outside the spirit of the Three Strikes law. In doing so, we are mindful of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background. (See *People v. Garcia* (1999) 20 Cal.4th 490, 503.) Here, there is no dispute that before defendant was convicted in 1994 for three violent or serious felonies, he had suffered several misdemeanor convictions and at least one felony conviction. Specifically, defendant was convicted of the following misdemeanor crimes: battery in 1988; being under the influence of a controlled substance in 1990; petty theft in 1990; and driving with a suspended license in 1991. He was also convicted in 1990 for felony possession of methaqualone.

6

The fact that defendant committed no crimes between 1994 and 2010 is easily explained:  defendant was in custody serving a life sentence after he was sentenced in 1994 for two counts of robbery, one count of kidnapping during the commission of a carjacking, and one count of  fleeing or attempting to elude a peace officer.  As noted by the trial court, just a few years after defendant was released from custody in 2010, and while he was still on parole, defendant armed himself with a gun and shot at Pace multiple times to settle a gambling dispute.  In sum, defendant's crimes did not result from a single period of aberrant behavior.  (See *People v. Garcia, supra,* 20 Cal.4th at p. 503.)  In fact, defendant's criminal history demonstrates he is "the kind of revolving-door career criminal for whom the Three Strikes law was devised."  (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320.)

We next turn to the issue of whether the court should have granted defendant's *Romero* motion because several of his 1994 prior strike convictions arose, allegedly, out of a single incident and, therefore, should have been treated as a single strike.  Here, the only evidence provided by defendant concerning the 1994 convictions is the abstract of judgment from that case.  That document only establishes that defendant was convicted of the three prior strike convictions on the same date in the same case.  That is, there is no evidence in the record before us to support defendant's contention that these crimes arose from a single criminal act.  (Cf. *People v. Vargas* (2014) 59 Cal.4th 635, 645 [trial court should have dismissed one of the prior strikes because the robbery and carjacking were based on the commission of the same act, forcibly taking the victim's car].)  For example, there is no evidence that the two robberies and kidnapping during the commission of a carjacking took place at the same time or even on the same day.  Indeed, defendant conceded in his *Romero* motion that the three prior strikes involved two victims  and the court found that defendant committed "three very distinct crimes."  Because error is never presumed and defendant's argument appears to be based upon evidence and matters not reflected in the record on appeal, the court's ruling must be affirmed.  (See *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

7

## DISPOSITION

The judgment is affirmed.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.[*]

WE CONCUR:

KITCHING, Acting P. J.

ALDRICH, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.